COLLYER INSULATED WIRE COMPANY *vs.* JOHN HOCKENSON.

APRIL 12, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

416

Moss, J. This is an appeal by an employer from a decree of the superior court dismissing, "without prejudice", its petition for review, under the workmen's compensation act, of an agreement entered into by the petitioner and the respondent and approved by the director of labor. Under that agreement the petitioner, for about two years, had been paying to the respondent compensation *for total disability* resulting from an accident, suffered by him in the course of his employment by the petitioner, on or about March 3, 1942.

This petition was filed in the office of the director of labor on March 28, 1944 and was based on the allegation that the respondent, long before that date, had ceased to be totally incapacitated and, though offered employment by the petitioner at light work, had refused to accept such offer. After a hearing on June 19, 1944, the petition was denied for the reason that the medical reports submitted in evidence did not furnish adequate ground for a finding that there had been any measurable decrease in the respondent's incapacity.

On appeal therefrom to the superior court, at a hearing *de novo* on May 9, 1945, undisputed evidence by a physician, who had examined the respondent, was introduced and clearly showed that by accident in the course of his employment the respondent had sustained a fracture of the second of the vertebrae of the spinal column that were located in his neck, such a fracture being commonly referred to as a broken neck, but that his spinal cord was not involved in this fracture.

It was shown, by uncontradicted and unimpeached medical testimony introduced at that hearing, that when he was examined on April 4, 1944, his ability to bend his head to either side was limited about one half; that he could bend it

forward without difficulty but that backward bending of it was about one-third limited; that his shoulder motions "were all free and normal except that going to the side and upward he lacked about ten or fifteen degrees of as much motion as he had in his right shoulder, and the right shoulder motions were normal." The physician's conclusion from that examination was that the respondent was not able to carry on his regular work, but that there were many kinds of industrial work which he could do. This witness also testified that on November 7, 1944, after an examination, he told the respondent that he could work and that the latter replied that he could not do his regular work as a spooler and did not feel like applying for a light job.

The respondent testified, in effect, that although his doctor had told him to take an easy job and although he could no longer do heavy work, he had always done it before his injury and would not accept any other kind of work. He further testified that he had difficulty in sleeping; that when the petitioner had offered to give him light work in the stock room, he had refused it because it would be on the "third shift", from midnight to eight o'clock in the morning, and he could not sleep in the daytime. At the time of his injury he had worked on this shift. He further testified that he told the petitioner that he would take a day job but was told that there was none for him.

The respondent further testified that he could do some kinds of work but admitted that he had not explored the possibility of employment for a man in his condition, although his own physician, who had treated him for about a year and a half, until May, 1944, had told him then that he could do light work. He admitted that the only work that he had tried to do since his accident was mowing his lawn and digging in his garden and he said that when he did that he soon got a pain in his back and had to stop and rest. He testified that he had applied to only one firm for employment and was told that he had to take an examination and he did not take one.

The trial justice filed a decision in which he made certain findings of fact that were thereafter substantially incorporated in the decree. These findings are to the effect that the respondent had suffered a serious injury but that it had been to a large degree repaired; that there was no limitation of motion of his neck, except sideways; that in the opinion of a medical expert his capacity for work had increased and he could do many types of work; that the evidence indicated that his capacity for work had been restored to such a degree that he should very promptly make a determined effort to obtain a day job doing light work. The conclusion of the decree was as follows: "In accordance with said findings of fact, it is hereby Ordered, Adjudged and Decreed that the Petition for Review of Collyer Insulated Wire Company filed herein be and the same hereby is denied and dismissed without prejudice."

The petitioner thereafter filed an appeal from that decree, on the grounds that it was contrary to the law and to the evidence and the weight thereof, that it was not sustained by the findings of fact contained in the decree; and that those findings clearly showed that the respondent had ceased to be incapacitated for work.

This case is governed by the provisions of §11 of general laws 1938, chapter 300, article II, as amended by public laws 1942, chapter 1246. After considering the evidence in the case we are of the opinion that there was legal evidence in support of the findings of fact in the decree and that therefore they are binding upon us in deciding the merits of petitioner's appeal. Furthermore, it is our judgment that those findings, when closely considered, show that the trial justice leaned strongly towards a finding that the respondent was then only partially incapacitated under the act, but that under all the circumstances he refrained from making such a definite finding. Apparently he was not able to determine the fair extent of that disability largely because the respondent had refused, for one ostensible reason or another, to try to do light work of any kind that had been offered to him.

Under this construction of the findings of fact, the words "without prejudice" at the end of the decree are significant. When the decree is read as a whole, such words import protection for the petitioner against a claim of *res adjudicata* in some later proceeding and a warning to the respondent as to his future conduct. In using those words in that manner the trial justice appears to have intentionally reserved to the petitioner, in case it later would be able to prove that the respondent by reasonable effort could obtain proper employment, the right to file a new petition to have the compensation payable to the respondent either reduced or terminated, without any disadvantage to it because of the present proceedings. So far as the respondent is concerned, we are of the opinion that the trial justice told him in abbreviated form that thereafter he should at least try to do the light work that the petitioner had offered him, if such employment were still available, or some other light work that it might offer him; that, in any event, he should try to secure employment at some work reasonably suitable to his condition, as testified to by the medical expert; and that if he persisted in being uncooperative and obstinate in his refusal to try to do light work in any capacity for any employer, in order that the amount of his disability could be fairly fixed, he ran the risk of losing all benefits provided for an injured employee by the act. We therefore are of the opinion that there is no merit in the petitioner's appeal.

The appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Sisson, Fletcher, Worrell & Hodge, Paul H. Hodge,* for petitioner.

*Everard Appleton,* for respondent.